## No. 25-1322

# In the
# United States Court of Appeals
# for the Tenth Circuit

WENDY FAUSTIN,

*Plaintiff-Appellant*,

v.

JARED POLIS in his official capacity as Governor of Colorado; PHILIP J. WEISER, in his official capacity as Colorado Attorney General; CITY AND COUNTY OF DENVER; KERRY C. TIPPER, in her official capacity as City Attorney of Denver; RON THOMAS, in his official capacity as Chief of the Denver Police Department; and JOHN WALSH, in his official capacity as District Attorney for the Second Judicial District,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Colorado
the Honorable S. Kato Crews
23-cv-1376-SKC-NRN

## APPELLANT'S MOTION
## FOR SUMMARY ACTION

Jeffrey C. Mateer
David J. Hacker
Roger Byron
FIRST LIBERTY INSTITUTE
2001 West Plano Pky., Ste. 1600
Plano, Texas 75075
(972) 941-4444
(972) 941-4457 (fax)
rbyron@firstliberty.org

Charles J. Cooper
*Counsel of Record*
David H. Thompson
Brian W. Barnes
John D. Ohlendorf
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

I.    Ms. Faustin's Speech. ...............................................................................2

II.   Defendants' Restrictions on Speech Outside Abortion Clinics. ...................4

III.  The Impact of the Challenged Laws on Ms. Faustin's Speech. .....................5

IV.  The Proceedings Below. .............................................................................6

ARGUMENT .....................................................................................................8

I.    The Challenged Laws Violate the First Amendment, and *Hill v. Colorado* Was Wrongly Decided..................................................................................8

    A. Plaintiff Has a First Amendment Right to Engage in Sidewalk Counseling. ..........................................................................................8

    B. The Challenged Laws Impose Content-Based Burdens on Ms. Faustin's Protected Speech. ...............................................................................10

       1.   Colo. Rev. Stat. Section 18-9-122. .........................................10

       2.   Denver Code of Ordinances Section 38-114. ......................14

    C. The Bans Fail Any Level of Heightened Scrutiny. ..................................15

II.   Given *Hill*, Briefing and Argument Would Not Aid this Court's Disposition of this Appeal.............................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023)........................................................................9

*Coalition Life v. City of Carbondale*,
   604 U.S. ---, 145 S. Ct. 537 (2025) ...................................................19, 20, 21

*Cohen v. California*,
   403 U.S. 15 (1971)........................................................................9

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022)....................................................................8, 20

*Erznoznik v. Jacksonville*,
   422 U.S. 205 (1975)......................................................................16

*Friedrichs v. California Tchrs. Ass'n*,
   2014 WL 10076847 (9th Cir. Nov. 18, 2014) ..............................................2

*Hill v. Colorado*,
   530 U.S. 703 (2000).......................... 1, 5, 6, 10, 11, 12, 13, 16, 17, 18, 19, 20

*Janus v. AFSCME*,
   585 U.S. 878 (2018)....................................................................2, 20

*Madsen v. Women's Health Ctr.*,
   512 U.S. 753 (1994)......................................................................17

*McCullen v. Coakley*,
   573 U.S. 464 (2014)............................................................5, 10, 14, 15, 19

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024)....................................................................9, 16, 17

*National Inst. of Fam. & Life Advocs. v. Becerra*,
   585 U.S. 755 (2018)......................................................................15

*New York State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022)..........................................................................2

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009)......................................................................10

*Ramos v. Louisiana*,
   590 U.S. 83 (2020)........................................................................20

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)........................................................ 10, 11, 12, 13, 14, 15

*Riley v. National Fed'n of the Blind of N.C.*,
    487 U.S. 781 (1988)........................................................9

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989)........................................................21

*Rogers v. Attorney Gen. N.J.*,
    2018 WL 10808705 (3d Cir. Sep. 21, 2018) ..................................2

*Schenck v. Pro-Choice Network of W. N.Y.*,
    519 U.S. 357 (1997)........................................................10

*Snyder v. Phelps*,
    562 U.S. 443 (2011)........................................................8, 9

## **<u>Statutes, Ordinances, and Rules</u>**

18 U.S.C. § 248(a)(1)........................................................18

COLO. REV. STAT.
    § 18-9-122(1) ........................................................13, 17
    § 18-9-122(2) ........................................................18
    § 18-9-122(3) ........................................................4, 11
    § 18-9-122(4) ........................................................4

DENVER CODE OF ORDINANCES
    § 38-86(1) ........................................................18
    § 38-114(b) ........................................................4, 14, 15

FED. R. APP. P.
    2 ........................................................21
    2(a) ........................................................1

## INTRODUCTION

Pursuant to Federal Appellate Rules 2 and 27, Plaintiff-Appellant Wendy Faustin respectfully requests the Court to decide this appeal summarily, without plenary briefing and oral argument, and to affirm the district court's decision *against her*. *See* FED. R. APP. P. 2(a) ("On its own or a party's motion, a court of appeals may—to expedite its decision or for other good cause—suspend any provision of these rules in a particular case . . . ."). Ms. Faustin brought this First Amendment facial challenge to materially identical Colorado and Denver laws that severely restrict pro-life "sidewalk counseling" outside abortion clinics, and she has acknowledged throughout the proceedings below, and acknowledges now here, that the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000), directly rejected the same constitutional claim against the same Colorado law. *Hill* held that Colorado's restrictions on pro-life sidewalk counselors are content-neutral and narrowly tailored time, place, and manner restrictions that pass constitutional muster. As the district court noted, "Ms. Faustin admits the purpose of this lawsuit is to have *Hill v. Colorado* overturned," Order at 3, Doc. 119 (D. Colo. July 29, 2025) (attached as Exhibit A), something that she acknowledges only the Supreme Court itself has authority to do. The district court, accordingly, granted summary judgment against Ms. Faustin, concluding: "[W]here the statute challenged in *Hill v. Colorado* and the statute challenged now are one and the same, this Court has no

1

discretion in the matter. Until the Supreme Court says otherwise, Colorado Rev. Stat. § 18-9-122 and the identical Denver Code of Ordinances § 38-114 (b), survive Plaintiffs challenge." *Id*. at 3–4.

Ms. Faustin respectfully submits that the Court should exercise its discretion to dispense with further briefing and summarily affirm the decision below so that Ms. Faustin can bring her First Amendment claim to the High Court without any unnecessary delay. *Cf. Rogers v. Attorney Gen. N.J.*, 2018 WL 10808705 (3d Cir. Sep. 21, 2018), *abrogated on other grounds by New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (summarily affirming, on appellant's motion, in light of acknowledged and then-controlling Supreme Court precedent); *Friedrichs v. California Tchrs. Ass'n*, 2014 WL 10076847 (9th Cir. Nov. 18, 2014), *abrogated on other grounds by Janus v. AFSCME*, 585 U.S. 878 (2018) (same). Plaintiff has consulted with Defendants about this motion, and the State opposes it.

## BACKGROUND

### I.     Ms. Faustin's Speech.

Plaintiff-Appellant Faustin is a resident of Denver, Colorado. Plaintiff's Statement of Undisputed Material Facts ¶ 1, Doc. 101-1 (D. Colo. Feb. 27, 2025) ("SUMF"). She believes that life begins at conception and that ending the life of the unborn is morally wrong. *Id.* ¶ 2. She feels compelled by these beliefs to advocate publicly on behalf of the unborn by engaging in a form of speech known as "sidewalk

counseling," which she has regularly practiced in the Denver area since the early 1990s. *Id.* ¶¶ 3, 8.

As currently practiced by Ms. Faustin under the restrictions imposed by the challenged laws, sidewalk counseling typically involves standing on a public sidewalk at least 100 feet away from an abortion clinic's door, displaying a sign with a pro-life message, and calling out to women from a distance of more than eight feet to ask them if she can speak with them about the nature of their unborn children, the procedure, and other available alternatives and resources. *Id.* ¶ 4. Ms. Faustin also brings along pamphlets or leaflets providing the same type of information, which she offers to women entering abortion clinics, again from a distance of at least eight feet. *Id.* ¶¶ 4, 38.

Ms. Faustin calls out to women and offers pamphlets from a distance of at least eight feet only because of the laws challenged in this case. *Id.* ¶¶ 6, 34. When Ms. Faustin speaks to women entering a clinic, she is peaceful, gentle, and kind. *Id.* ¶ 5. But because—as discussed further below—the laws challenged in this case require her to remain a distance of eight feet away from women entering abortion clinics unless they affirmatively give her consent to approach closer, she is forced to initiate any interaction with those women by raising her voice to them. *Id.* ¶¶ 6, 34. Ms. Faustin would strongly prefer to instead begin her interaction with women by approaching them within a normal conversational distance under eight feet and

3

attempting to engage them in a peaceful and compassionate conversation about abortion. *Id.* ¶¶ 7, 36.

## II.    Defendants' Restrictions on Speech Outside Abortion Clinics.

Ms. Faustin cannot speak with women in this gentle, compassionate way because of the content- and viewpoint-based restrictions on that speech that Defendants impose and enforce. Colorado law provides:

> No person shall knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health-care facility.

COLO. REV. STAT. § 18-9-122(3). Section 18-9-122(4) defines "health-care facility" to mean "any entity that is licensed, certified, or otherwise authorized or permitted by law to administer medical treatment in this state." *Id*. § 18-9-122(4). That includes abortion clinics. *See id.*; SUMF ¶ 10.

Defendants City and County of Denver have adopted a municipal ordinance substantially identical to Section 18-9-122(3), which provides:

> No person shall knowingly approach another person within eight (8) feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in the public way or sidewalk area within a radius of one hundred (100) feet from any entrance door to a health care facility.

DENVER CODE OF ORDINANCES § 38-114(b).

### III.    The Impact of the Challenged Laws on Ms. Faustin's Speech.

COLO. REV. STAT § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) make it impossible for Ms. Faustin to engage in the type of speech that she believes is most effective. "[T]he 'counseling' and 'educating' likely to take place outside a health care facility cannot be done at a distance and at a high-decibel level." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting). But Defendants' eight-foot buffer zone forces Ms. Faustin "to rais[e] her voice at patients from outside the zone—a mode of communication sharply at odds with the compassionate message she wishes to convey." *McCullen v. Coakley*, 573 U.S. 464, 487 (2014).

The challenged laws hold out the possibility that Ms. Faustin could approach a woman entering an abortion clinic by first obtaining her consent, but that affirmative consent requirement is itself a significant burden on her speech. A request for consent to approach shouted from eight feet away is easily misinterpreted as unfriendly, SUMF ¶ 35, and in any event, requiring Ms. Faustin to begin a conversation by shouting a request for consent from eight feet away itself forces her to alter her method of communicating in a way that is antithetical to her "ability to initiate the close, personal conversations" she wishes to have with these women. *McCullen*, 573 U.S. at 487; SUMF ¶¶ 34, 36.

COLO. REV. STAT. § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) also significantly hinder Ms. Faustin's ability to tender leaflets or pamphlets

to women entering abortion clinics. The normal and most effective way of getting someone to accept a leaflet or pamphlet is to directly extend it near their hands. SUMF ¶ 39. Requiring Ms. Faustin to obtain affirmative consent to proffer a leaflet, at the reach of eight feet or more, renders this form of communication "utterly ineffectual." *Hill*, 530 U.S. at 757 (Scalia, J., dissenting); *see* SUMF ¶ 40.

COLO. REV. STAT. § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) have repeatedly burdened Ms. Faustin's speech in these ways for many years. SUMF ¶¶ 45–48. And they continue to do so: were it not for those laws, she would immediately change her method to one that she believes would be far more effective—approaching young women directly, within a normal conversational distance, and politely attempting to engage them in a peaceful and compassionate conversation about abortion. *Id.* ¶¶ 49–50, 52–53. She refrains from engaging in sidewalk counseling in this more effective way only because she is afraid that Defendants would enforce the challenged state and Denver laws against her. *Id.* ¶ 54.

## IV.    The Proceedings Below.

Ms. Faustin brought this challenge on June 1, 2023. She acknowledged in the introduction to her complaint that "the result she seeks is contrary to . . . *Hill*" and that the purpose of her challenge was "to seek to have *Hill* overruled." Complaint ¶ 6 (D. Colo., filed June 1, 2023), Doc. 1. She therefore proposed in her Rule 26(f) statement that the district court "resolve her claims immediately" against her under

6

*Hill*. Proposed Scheduling Order at 9 (D. Colo., filed Sep. 12, 2023), Doc. 59. The State, by contrast, sought "a 10-month discovery window" so that it could "compile an evidentiary record" supporting the constitutionality of the challenged law, *id.* at 10—the very law *Hill* had already *held constitutional*. The district court, over Ms. Faustin's opposition, sided with the State, setting a discovery period of 10 months—a period that ultimately was extended to over 14 months.

During the course of those 14 months, Defendants sought extensive written discovery—including multiple "all documents" requests that would have required Plaintiff (a private retiree who is being represented *pro bono*) to review over 10,000 documents dating back a quarter of a century (requests that the district court ultimately limited to 5,000 documents going back five years). *See* Courtroom Minutes (D. Colo., filed July 22, 2024), Doc. 83. The state also obtained reports from four expert witnesses. At the conclusion of this discovery period, both sides filed cross-motions for summary judgment.

On July 29, 2025, the district court granted summary judgment to Defendants in a brief, four-page order. The court concluded, as noted above, that "Plaintiff's claims are foreclosed by the Supreme Court's holding in *Hill v. Colorado*." Order at 3. The court had no occasion to cite, or even mention, any of the expert reports or other discovery that the State spent over a year compiling. Indeed, it is difficult to

conceive of any way in which the court's order would have differed had it been entered two years earlier, at the commencement of the action.

## ARGUMENT

In the following pages, Ms. Faustin outlines the essential points of her argument that *Hill* was wrongly decided, not to convince this Court to consider her First Amendment claim de novo, which she acknowledges this Court cannot do, but rather to establish that the Supreme Court's jurisprudence in this area has evolved enormously since *Hill*, and that her quest to urge the Supreme Court to reconsider, and overrule, *Hill* is not only reasonable but has a very real prospect of success.

## I.    The Challenged Laws Violate the First Amendment, and *Hill v. Colorado* Was Wrongly Decided.

### A. Plaintiff Has a First Amendment Right to Engage in Sidewalk Counseling.

There can be no serious question that the First Amendment protects Ms. Faustin's right to speak with women outside of abortion clinics. The question is whether Colorado's and Denver's laws are valid time, place, and manner restrictions on her speech, as the Supreme Court held in *Hill*.

"Abortion presents a profound moral issue on which Americans hold sharply conflicting views," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 223 (2022), and "[t]he First Amendment reflects a profound national commitment to the principle that debate" on such controversial issues "should be uninhibited, robust,

and wide-open." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (cleaned up). That is so whether or not "the government considers [Ms. Faustin's] speech sensible and well intentioned or deeply misguided and likely to cause anguish or incalculable grief." *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) (cleaned up).

The First Amendment's protection extends beyond the bare words Ms. Faustin wishes to utter, to the *way* she wishes to utter them—the nonverbal aspects of expression such as volume, tone of voice, and proximity that profoundly influence the ultimate message conveyed. "[O]rganizing and presenting" a selection of words "is expressive activity of its own," *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024), and the Free Speech Clause protects the People's right to choose "both what they want to say and how to say it," *Riley v. National Fed'n of the Blind of N.C.*, 487 U.S. 781, 791 (1988). As the Supreme Court explained in the landmark *Cohen v. California* decision, "[w]e cannot sanction the view that the Constitution, while solicitous of the cognitive content of individual speech has little or no regard for that emotive function which practically speaking, may often be the more important element of the overall message sought to be communicated." 403 U.S. 15, 26 (1971). Indeed, as the State's own experts testified, a speaker's proximity "[is] a message in itself," and the message of sidewalk counselors is thus "entirely premised on the ability to get close to someone." SUMF ¶¶ 31, 33. All of these are "expressive choices" protected by the Free Speech Clause. *NetChoice*, 603 U.S. at 732.

9

Finally, the First Amendment also emphatically protects "handing out leaflets in the advocacy of a politically controversial viewpoint." *McCullen*, 573 U.S. at 488 (cleaned up). "Leafletting . . . on matters of public concern [is a] classic form[ ] of speech that lie[s] at the heart of the First Amendment." *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 377 (1997).

## B. The Challenged Laws Impose Content-Based Burdens on Ms. Faustin's Protected Speech.

Because Ms. Faustin's speech is constitutionally protected, "any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009). Both challenged laws clearly regulate based on the content—and indeed, the viewpoint—of speech.

### 1. COLO. REV. STAT. Section 18-9-122.

A law can be content based either "on its face" or because it "cannot be justified without reference to the content of the regulated speech." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (cleaned up). Colorado's law qualifies in both ways.

i.     Section 18-9-122 "is obviously and undeniably content based" on its face. *Hill*, 530 U.S. at 742 (Scalia, J., dissenting). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed"—that is, if it "target[s] speech based on its

10

communicative content." *Reed*, 576 U.S. at 163. Colorado's challenged law does just that: a person can approach another to communicate a variety of messages—to wish them a good day, to advertise a local business, to ask if she dropped her wallet, to reaffirm her choice to have an abortion—but *not* to communicate a message of "protest, education, or counseling." COLO. REV. STAT. § 18-9-122(3). Accordingly, "[w]hether particular messages violate the statute is determined by their substance." *Hill*, 530 U.S. at 766 (Kennedy, J., dissenting). To be sure, the topics and ideas proscribed are "broad categor[ies]," *id.* at 723 (majority), but they are not limitless ones—and the limits are drawn *based on the communicative content conveyed*. "Whether a speaker must obtain permission before approaching within eight feet—and whether he will be sent to prison for failing to do so—depends entirely on *what he intends to say* when he gets there." *Id.* at 742 (Scalia, J., dissenting).

Colorado's law is also facially content-based as a de facto matter because it applies only to that subset of "protest, education, or counseling" that takes place near "a health-care facility." COLO. REV. STAT. § 18-9-122(3). True, the law would theoretically bar an animal-rights activist from approaching a woman entering a clinic to give her literature protesting the meat-packing industry; but in the real world, everyone knows that animal rights activists protest meat-packing plants *in the vicinity of meat-packing plants*. And "[w]e would close our eyes to reality were we to deny that 'oral protest, education, or counseling' outside the entrances to medical

11

facilities concern a narrow range of topics—indeed, one topic in particular." *Hill*, 530 U.S. at 767 (Kennedy, J., dissenting).

ii.    Government regulations "that, though facially content neutral, . . . cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys," are also content-based. *Reed*, 576 U.S. at 164 (cleaned up). The challenged Colorado statute is content-based in this way, too.

That is evident from the expert reports the State has produced in defense of its law. Mr. Holloway, whom the State proffers as an expert on public health, opines that the law is "in the public interest" because "[e]ncounters with 'protesters' "—the term he uses to include sidewalk counselors—can cause "significant psychological effects on women seeking abortions," such as "heightened feelings of stigma, secrecy, and shame surrounding abortion, . . . reinforcing negative societal perceptions of abortion." SUMF ¶¶ 13–14. And by "creat[ing] an atmosphere of fear and stigma around receiving abortion care," Holloway asserts, this "protest activity at abortion clinics" "can prevent or delay many pregnant people from obtaining abortions" and "can compound the stress and anxiety experienced by individuals seeking abortion care, potentially impacting their overall well-being." *Id*. ¶¶ 16–17. The testimony of the State's other health expert, Dr. Calonge, is in accord. *See id.* ¶¶ 20–22.

It is self-evident that this parade of alleged negative effects can only arise from exposure to sidewalk counselors *because of the pro-life message they communicate*. As Mr. Holloway was forced to acknowledge, a woman entering a clinic who encounters protestors *supporting abortion*, for instance—or protesting federal fiscal policy or conflict in the Middle East—would plainly not feel shame, stigma, or guilt as a result; those feelings of guilt, stress, and anxiety only ensue in the case of sidewalk counselors because the women hear and understand their message of "[a]ntiabortion sentiments." *Id.* ¶¶ 13, 19. Section 18-9-122(3)'s "proximity limitation" can thus only conceivably be "in the public interest," in Holloway's account, *because it limits women's exposure* to that "stigma" and "guilt" inducing pro-life message. *Id.* ¶¶ 13–14.

iii.    In addition to restricting speech based on its content in the ways just discussed, Section 18-9-122(3) also engages in "a more blatant and egregious form of content discrimination": that is, "discrimination among viewpoints." *Reed*, 576 U.S. at 168 (cleaned up). The text of Colorado's law itself makes clear that its purpose is to restrict speech that "protest[s] or counsel[s] *against* certain medical procedures." COLO. REV. STAT. § 18-9-122(1) (emphasis added). "The word 'against' reveals the legislature's desire to restrict discourse on one side of the issue." *Hill*, 530 U.S. at 768–69 (Kennedy, J., dissenting). And the legislative history of the statute, which is overwhelmingly comprised of debate and testimony discussing pro-

13

life political expression outside of abortion clinics, confirms that the law's purpose was to restrict pro-life speech. SUMF ¶¶ 23–24. The justification of the law offered by the State's experts again makes this plain. As noted, the analytical lynchpin of the state experts' opinion that the challenged law safeguards the health of women seeking abortions is the proposition that it protects them from the "feelings of stigma, secrecy, and shame" and "stress and anxiety" that flow from exposure to "[a]ntiabortion sentiments." *Id.* ¶¶ 13–14, 17. Those negative feelings result, as one of those experts acknowledged, only from exposure to sidewalk counselors' *pro-life* message—not exposure to a *pro-choice* message articulated, for example, by clinic volunteers who escort women inside and attempt to counter any pro-life speech near the entrance. *Id.* ¶ 18; *see also McCullen*, 573 U.S. at 475 (describing clinics' use of escorts). That is naked viewpoint discrimination.

### 2. DENVER CODE OF ORDINANCES Section 38-114.

Denver's sidewalk-counseling restrictions, Code of Ordinances Section 38-114, are content-and-viewpoint-based for virtually all of the same reasons. Denver's ordinance is likewise on its face triggered by "the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163: it bars a speaker within 100 feet of the entrance to an abortion clinic from approaching another person within eight feet only if she does so to "engag[e] in oral protest, education, or counseling," DENVER CODE OF ORDINANCES § 38-114(b). Like Colorado's law, Denver's ordinance applies only

to speech in a particular, surgically defined location: near the entrance to "a health care facility," *id.*, a place "where speech on only one politically controversial topic is likely to occur—and where that speech can most effectively be communicated," *McCullen*, 573 U.S. at 501 (Scalia, J., concurring). And Denver's ordinance, too, "cannot be justified without reference to the content"—and, indeed, the viewpoint— "of the regulated speech." *Reed*, 576 U.S. at 164 (cleaned up). Denver's ordinance, it represented to the Supreme Court in an amicus brief filed in the *Hill* case, was "similar in . . . purpose" to Colorado's statute. SUMF ¶ 27. And at least in part, Denver explained, that purpose was to prevent the "substantial negative impact on patients that encounter" sidewalk counselors. *Id.* ¶ 28. For the reasons discussed above, targeting that purported "negative impact" is "not . . . a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481.

### C. The Bans Fail Any Level of Heightened Scrutiny.

Because both COLO. REV. STAT. § 18-9-122(3) and DENVER CODE OF ORDINANCES § 38-114(b) regulate speech based on its content, they "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *National Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (quoting *Reed*, 576 U.S. at 163). They cannot pass that strict scrutiny test. Indeed, the challenged laws are

unconstitutional under even intermediate scrutiny, the lowest standard that could conceivably apply.

Both laws fail at the threshold because the government interest they are allegedly designed to further, according to the State's experts, is not legitimate, let alone compelling or significant. As discussed, the government's interest is protecting women entering abortion clinics from the "stress," "fear," "shame," "guilt," "anxiety," and "low self-esteem" they will purportedly feel if they encounter within eight feet sidewalk counselors espousing their pro-life message within 100 feet of the clinic's entrance. SUMF ¶¶ 13, 17, 20, 28. And that interest—protecting listeners from the unpleasant direct effects of hearing unwelcome speech—is antithetical to our whole First Amendment tradition. "[I]n public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Hill*, 530 U.S. at 752 (Scalia, J., dissenting).

The Supreme Court has repeatedly and emphatically held that "the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer." *Erznoznik v. Jacksonville,* 422 U.S. 205, 210 (1975). It has rejected any suggested government interest in doing this across decades and across a wide variety of contexts. Just last year in *NetChoice*, the Court made clear that the

16

government "may not interfere with private actors' speech to advance its own vision of ideological balance" and "cannot prohibit speech to improve or better balance the speech market." 603 U.S. at 741.

Nor can Defendants justify the challenged law based the sole interest identified in the law itself: "preventing the willful obstruction of a person's access to medical counseling and treatment at a health-care facility." COLO. REV. STAT. § 18-9-122(1). Neither law is narrowly tailored to that interest. The overbreadth of the restriction at issue is astonishing, "prohibit[ing] a vast amount of speech that cannot possibly be thought to correspond to that evil." *Hill*, 530 U.S. at 755 (Scalia, J., dissenting). It covers *any* approach without prior consent *by anyone* and *to anyone* within the prohibited zone—not merely approaches that are threatening in some way or that would obstruct passage to the entrance. That "prophylactic theory seems to be based on a supposition that most citizens approaching a health care facility are unwilling to listen to a fellow citizen's message," which has "no support in law or in fact." *Id*. at 778 (Kennedy, J., dissenting). More to the point, "it is difficult, indeed, to justify a prohibition on *all* uninvited approaches of persons seeking the services of the clinic, regardless of how peaceful the contact may be, without burdening more speech than necessary to prevent intimidation and to ensure access to the clinic." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 774 (1994).

Finally, the challenged laws fail any tailoring analysis for the independent reason that there are far less-intrusive means—already on the books—of protecting any interest in preventing harassment and obstruction outside abortion clinics. For instance, subsection 2 of Colorado's law—which Ms. Faustin does not challenge—independently makes it a crime if anyone "knowingly obstructs, detains, hinders, impedes, or blocks another person's entry to or exit from a health-care facility." COLO. REV. STAT. § 18-9-122(2). Similarly, the federal Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") makes it a crime if anyone "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person . . . from[ ] obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). And likewise, a Denver municipal ordinance makes it unlawful for any person to either (1) "[o]bstruct a highway, street, sidewalk, . . . [or] building entrance," or (2) "[d]isobey a reasonable request or order to move . . . to prevent obstruction of a highway or passageway or to maintain public safety." DENVER CODE OF ORDINANCES § 38-86(1).

## II. Given *Hill*, Briefing and Argument Would Not Aid this Court's Disposition of this Appeal.

As Justice Scalia noted in his dissenting opinion in *Hill*, the majority's decision in that case was the product of "the 'ad hoc nullification machine' that the Court has set in motion to push aside whatever doctrines of constitutional law stand

18

in the way of th[e] highly favored practice" of abortion. 530 U.S. at 741 (Scalia, J., dissenting). Parts of that machine have been dismantled since *Hill* was decided 25 years ago, and as Justice Thomas recently noted, the precedential force of *Hill* itself was "razed" by the Court's decision in *Dobbs*. *Coalition Life v. City of Carbondale*, 604 U.S. ---, 145 S. Ct. 537, 538, 540 (2025) (Thomas, J., dissenting from the denial of certiorari).

Indeed, Justice Thomas's separate opinion in *Coalition Life* persuasively demonstrates that *Hill* was "an 'absurd,' 'defunct, 'erroneous,' and 'long-discredited' 'aberration,' " in the Court's First Amendment jurisprudence from the beginning and that its approach has since been decisively abandoned by the Court. *Id*. at 538. That is perhaps most evident from *McCullen*. Though that case dealt with the constitutionality of a sidewalk-counseling law quite similar to Colorado's in many respects, the Supreme Court pointedly *did not* rely on *Hill*, and it ultimately *invalidated* the law under the First Amendment. Moreover, the plurality expressly repudiated *Hill*'s central rationale, holding that preventing the "undesirable effects that arise from the direct impact of speech on its audience or listeners' reactions to speech . . . . would not" constitute "a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481 (cleaned up). "That position is irreconcilable with *Hill*, which the Court did not even bother to cite." *Coalition Life*, 145 S. Ct. at 539 (Thomas, J., dissenting from the denial of certiorari). *Hill* "is likewise at odds

with *Reed*," which "establish[ed] that strict scrutiny is the proper standard of review when a law targets a specific subject matter even if it does not discriminate among viewpoints within that subject matter," a proposition directly contrary to *Hill*'s core reasoning. *Id.* at 539–40 (cleaned up). And "[i]f *Hill*'s foundation was deeply shaken before *Dobbs*, the *Dobbs* decision razed it," *id.* at 540 (cleaned up), by calling it out as a "distort[ion] [of] First Amendment doctrines," *Dobbs*, 597 U.S. at 287 & n.65.

Accordingly, "[i]t is unclear what, if anything, is left of *Hill*." *Coalition Life*, 145 S. Ct. at 539 (Thomas, J., dissenting from the denial of certiorari). But to whatever extent it does have continuing vitality, the Supreme Court clearly appears poised to reconsider and overrule it. When considering whether to overrule one of its own precedents, the Supreme Court looks first to "the quality of [the precedent's] reasoning," *Janus*, 585 U.S. at 917, including whether it is "not just wrong, but grievously or egregiously wrong," *Ramos v. Louisiana*, 590 U.S. 83, 121 (2020) (Kavanaugh, J., concurring); *see Dobbs*, 597 U.S. at 266–68. For all the reasons explained above, *Hill* meets that standard. It also satisfies the other criteria the Court has looked to in deciding whether to overrule a precedent. *See Janus*, 585 U.S. at 917. *Hill*'s reasoning—a mishmash of "captive-audience" reasoning, the right to privacy, and the supposedly "special" interest of the government in health care, 530 U.S. at 715–30—is completely unworkable. The decision was radically inconsistent with First Amendment law at the time, *id.* at 741 (Scalia, J., dissenting), a fact that

has been brought into sharp focus by the legal developments of the ensuing decades, most notably *Reed*. Finally, no meaningful reliance interests depend on *Hill*.

But as Plaintiff acknowledged below and acknowledges again here, the Supreme Court's general rule that when one of its precedents "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," the lower courts "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). The district court adhered to that general rule, concluding that "this case is controlled by the Supreme Court's holding in *Hill*," such that "[u]ntil the Supreme Court says otherwise, Colo. Rev. Stat. § 18-9-122 and the identical Denver Code of Ordinances § 38-114(b), survive Plaintiff's challenge." Order at 4. Given that disposition, Ms. Faustin respectfully submits that further briefing and argument would not meaningfully aid this Court's resolution of this appeal. The most efficient course of action, and the course that will restore Ms. Faustin's First Amendment rights most expeditiously, is for the Court to exercise its discretion to dispense with plenary briefing and argument, *see* FED. R. APP. P. 2, so that the Supreme Court may promptly be given the opportunity to "utter[ ] the phrase 'we overrule *Hill*' " with as little further delay as possible. *Coalition Life*, 145 S. Ct. at 540 (Thomas, J., dissenting from the denial of certiorari).

21

## CONCLUSION

The Court should dispense with plenary briefing and argument and decide the case summarily.

August 29, 2025

Jeffrey C. Mateer
David J. Hacker
Roger Byron
FIRST LIBERTY INSTITUTE
2001 West Plano Pky., Ste. 1600
Plano, Texas 75075
(972) 941-4444
(972) 941-4457 (fax)
rbyron@firstliberty.org

Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper
*Counsel of Record*
David H. Thompson
Brian W. Barnes
John D. Ohlendorf
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) because this motion contains 5,200 words, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

This motion complies with the typeface and type style requirements of FED. R. APP. P. 27(d)(1)(E) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: August 29, 2025                                     s/ Charles J. Cooper
                                                          Charles J. Cooper

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that I served copies of the foregoing to the following counsel by delivering said copes to a commercial carrier addressed as follows:

Peter G. Baumann
Office of the Attorney General for the State of Colorado
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
*Counsel for Appellees Polis and Weiser*

Andres Alers
Denver City Attorney's Office
201 West Colfax Avenue
Denver, CO 80202
*Counsel for Appellees City and County of Denver, Tipper, and Thomas*

Andrew David Ringel
Hall & Evans LLC
1001 17th Street, Suite 300
Denver, CO 80202
*Counsel for Appellee Walsh*


Dated: August 29, 2025                    s/ Charles J. Cooper
                                          Charles J. Cooper